```
                  UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF PENNSYLVANIA

KAREN SMITH,                   .
UNITED STATES OF AMERICA       . Case No. 5:11-cv-02756-LS
AND STATE OF NORTH             .
CAROLINA, EX REL.              .
KAREN SMITH,                   .
                               . U.S. District Court
     Plaintiffs,               . 601 Market Street
                               . Philadelphia, PA
       vs.                     .
                               .
CAROLINA COMMUNITY MENTAL      .
HEALTH CENTERS, INC.,          . February 27, 2018
et al.                         . 5:17 p.m.
                               .
     Defendants.               .
. . . . . . . . . . . . . .

              TRANSCRIPT OF SETTLEMENT CONFERENCE
                BEFORE HONORABLE TIMOTHY R. RICE
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff,        BRUCE G. BARON, ESQ.
Karen Smith:              CAPOZZI & ASSOCIATES, P.C.
                          2933 North Front Street
                          Harrisburg, PA  17110
                          (717) 233-4101
                          bruceb@capozziadler.com


For the United States:    JUDITH A. AMOROSA, ESQ.
                          VIVECA PARKER, ESQ.
                          CHARLENE KELLER FULLMER, ESQ.
                          615 Chestnut Street, Suite 1250
                          Philadelphia, PA  19106
                          (215) 861-8301
                          judith.amorosa@usdoj.gov
                          charlene.fullmer@usdoj.gov

                          Patricia Bontempo, Auditor
```

```
For the Defendants        DAVID M. LAIGAIE, ESQ.
Melissa Chlebowski,       ECKERT SEAMANS CHERIN
Lehigh Valley NE, and         & MELLOTT, LLC
Carolina Community        Two Liberty Place, 22nd Floor
Mental Health Clinics:    50 South 16th Street
                          Philadelphia, PA  19102
                          (215) 851-8428
                          jill@eckertseamans.com


For the Defendants        AIDAN P. O'CONNOR, ESQ.
Melchor Martinez,         JONATHAN O. BAUER, ESQ.
MM Consultants, LLC,      PASHMAN STEIN WALDER HAYDEN
et al.                    Court Plaza South
                          21 Main Street, Suite 200
                          Hackensack, NJ  07601-7054
                          (201) 488-8200
                          aoconnor@pashmanstein.com




AUDIO OPERATOR:           Patrick Kelly

TRANSCRIBED BY:           Valori Weber
                          Weber Reporting Corporation
                          2755 Commercial Street SE, #101-216
                          Salem, OR  97302
                          (970) 405-3643
                          valori.weber@gmail.com




          Proceedings recorded by electronic sound
    recording, transcript produced by transcription service.
```

```
 1              THE COURT:  Please relax.  Stay seated.

 2              Thanks everybody for staying so late.  We've been

 3    working this afternoon on trying to settle the case of

 4    Karen Smith v. Carolina Community Mental Health Centers.

 5    The docket number's 11-2756.

 6              Why doesn't everybody introduce themselves and

 7    their teams, and we'll try to memorialize the settlement

 8    material terms.

 9              MR. BARON:  I'm Bruce Baron.  I'm the attorney

10    for Karen Smith, the plaintiff realtor in this case.

11              THE COURT:  All right.  Thanks for coming in from

12    Harrisburg.

13              MS. PARKER:  Vivaca Parker for the United States.

14              MS. AMOROSA:  Judy Amorosa for the United States,

15    and also Pat Bontempo, our auditor, is here.

16              THE COURT:  Thank you for coming and thanks for

17    all your patience today.

18              Mr. Laigaie.

19              MR. LAIGAIE:  Good afternoon, Your Honor.  Dave

20    Laigaie on behalf of Melissa Chlebowski, Lehigh Valley

21    Northeast, and Carolina Community Mental Health Clinics.

22              MR. O'CONNOR:  Good afternoon, Your Honor.  Aidan

23    O'Connor and John Bauer, Pashman Stein Walder Hayden, for

24    Melchor Martinez and related companies, MM Consultants,

25    etc.
```

 1          THE COURT:  Okay.  Thanks, everybody, for all
 2    your hard work today.
 3          What I'd like to do is summarize what I think are
 4    the material terms and make sure everybody agrees with
 5    those.
 6          The case is going to be settled with respect to
 7    these Defendants who are represented here today for
 8    $800,000 payment to be made within six months of today.
 9    Failure to make that payment will result in the entry of a
10    $3 million consent judgment, which will be held by me and
11    provided to the Government only after there's been a two-
12    week cure period.
13          There's going to be an exclusion from
14    participating in -- what, all the HHS programs, or what
15    programs are we excluding?
16          MR. BARON:  Federal healthcare programs.
17          MS. AMOROSA:  All federal healthcare programs.
18          THE COURT:  All federal healthcare programs.
19    Mr. Martinez, for a period of ten years, and that's
20    currently in effect now, correct?
21          MS. AMOROSA:  Yes.
22          THE COURT:  And then for Ms. Chelbowski, for a
23    period of five years, which will begin six months from
24    today; is that correct?
25          MS. AMOROSA:  Yes.

```
 1              THE COURT:  And also for a five-year period for
 2    the clinics that are operated by both Defendants.
 3              In addition, the Defendants will agree not to
 4    sell or transfer any properties other than the three that I
 5    believe are going to be sold to satisfy the $800,000
 6    without prior permission from either me or Judge Stengel.
 7    And the properties that my understanding are going to be
 8    sold are two properties on North 5th Street in Philadelphia
 9    and a property on 910 4th Street in Bethlehem to satisfy
10    the $800,000 payment.
11              Is there any -- are those terms correct, first of
12    all?  Let's start with the Government.
13              MS. AMOROSA:  Can I just consult with my
14    colleagues for one second?
15              THE COURT:  Yeah, sure.
16              (Discussion held between counsel off the record.)
17              MS. AMOROSA:  Your Honor, we would just, as a
18    very basic point, say that the Defendants are joint and
19    severally liable to the extent that each of the Defendants
20    individually would be liable for the whole part, just basic
21    a point.
22              THE COURT:  All right.  Well, they're both going
23    to sign the consent judgment.
24              MS. AMOROSA:  Yes.
25              THE COURT:  So you're going to sign that, and
```

1     then somebody's going to provide it to me and I'm going to

2     hold it, so both the Defendants are going to sign it

3     individually and on behalf of their entities.  So they're

4     both liable.

5          MS. AMOROSA:  Yes, Your Honor.  And Your Honor

6     made the statement on the record, but we would just like to

7     reiterate that Dr. Martinez continues to be under current

8     federal programs exclusion -- healthcare exclusion.  That's

9     ongoing.  He has not been granted reinstated.  So the ten

10    years would be a ten-year additional exclusion period,

11    whereby he would be excluded and not to reapply for

12    reinstatement.  You've made the point, Your Honor, I just

13    wanted to state it more thoroughly on the record.

14         THE COURT:  Okay.

15         MR. O'CONNOR:  I just want to clarify it, and I

16    think it doesn't make much difference.  But whatever the

17    prior exclusion is, it's not affected by this settlement.

18    This is a ten-year period exclusion going forward.

19         THE COURT:  Okay.

20         MR. O'CONNOR:  They're just separate things.

21         THE COURT:  Okay.  So he'll be excluded today for

22    ten years.

23         MS. AMOROSA:  He is currently excluded.

24         THE COURT:  Yeah, he's already excluded, but he's

25    going to continue --

1           MS. AMOROSA:  Right.

2           THE COURT:  -- for ten years from today?  Is that

3    right?

4           MR. O'CONNOR:  Yeah, that's right.

5           THE COURT:  Okay.

6           MR. O'CONNOR:  They're separate.  Whatever the

7    prior exclusion is, it is.

8           THE COURT:  Okay.

9           MR. O'CONNOR:  And it's not affected by what

10   we're doing here today.

11          THE COURT:  Okay.

12          MR. O'CONNOR:  The other issue -- oh, you --

13          THE COURT:  Let me just see if the Government has

14   any other changes.

15          MR. O'CONNOR:  Okay.

16          THE COURT:  Is there any material terms I didn't

17   state, Ms. Amorosa?

18          MS. AMOROSA:  No, that -- all that is correct.

19   Just the way HHS exclusion works and the fine details of

20   this agreement will include the finer details of an HHS

21   exclusion, a party who is excluded must apply for

22   reinstatement.  So I think --

23          THE COURT:  I think they understand that.

24          MS. AMOROSA:  -- inclusion of this five- and ten-

25   year period, the parties will need to apply for

1    reinstatement.

2            THE COURT:  Okay.

3            MS. AMOROSA:  That will be in the agreement.

4            THE COURT:  Okay.  And this is all going to be

5    memorialized in a broader --

6            MS. AMOROSA:  Yes.

7            THE COURT:  -- settlement agreement involving

8    releases and all the formal language that goes along with

9    the settlement.  I'm just re-citing the key terms today.

10            MS. AMOROSA:  Yes, Your Honor.  Thank you.

11            THE COURT:  Okay.  Now --

12            MR. LAIGAIE:  Your Honor, one minor point I

13    wanted to address.

14            THE COURT:  Yeah, sure.

15            MR. LAIGAIE:  Your Honor mentioned that the

16    $800,000 payment would be within six months of today.  And

17    I would just tweak that to six months within execution of

18    the settlement agreement.

19            And there's a practical reason for that, Your

20    Honor.  The -- it's going to be a short period of time for

21    us to sell those properties.  The settlement agreement --

22    the executed settlement agreement will enable us to go --

23    and go to buyers to sell this property.  Without that, what

24    will show is some kind of lien on the title of the

25    properties, and it will be a real hassle to try to sell.

1          So I'm not -- it's probably a week, ten days till

2    we get this thing papered.  It will be six months from

3    then.

4          THE COURT:  How long will that take, Ms. Amorosa?

5          MS. AMOROSA:  Your Honor, we have multiple levels

6    of approval within our office, which can be pretty quick,

7    but the Agency approval, we don't have control over, and

8    that can take some time to actually approve the --

9          THE COURT:  Is there some document that you can

10   get to the Defendants that will allow them to obviate this

11   lien issue?

12         MS. AMOROSA:  Yeah, our --

13         MR. O'CONNOR:  Well, I think the -- I'm sorry.

14         MS. AMOROSA:  Go ahead.

15         MR. O'CONNOR:  I think the issue is, Judge,

16   there's -- it's public record that this case is out there.

17   And all we're saying is in order for (indiscernible) to

18   have negotiate with buyers and the best chance of selling

19   the property as quickly as possible, if he's got the

20   settlement that says -- contemplate that these properties

21   are being sold and there's not going to be the cloud of

22   this lawsuit out there, what we're saying is, six months

23   from the day that the settlement is signed.

24         THE COURT:  But that might take months with HHS.

25   So I'll have the U.S. Attorney get you some type of

1  document to satisfy that concern.

2         MS. AMOROSA:  Your Honor, my colleague -- we

3  would suggest that the transcript of this proceeding could

4  be that document.

5         THE COURT:  All right.  Maybe that -- you can

6  write a letter --

7         MS. AMOROSA:  And we can write a letter to --

8         THE COURT:  -- accompanying the transcript or

9  something.

10        MS. AMOROSA:  -- accompany.  And we can -- how

11  soon can we get a transcript?

12        MR. O'CONNOR:  I'm sure we can get a transcript

13  within, you know, some period of time, but I don't know

14  that that's -- having dealt with those sort of things

15  before, those are not necessarily -- when you show it to

16  real estate lawyers and other people, it's not the same

17  thing.

18        We're not trying to delay this.  I understand

19  it's the Government.  We all knows how it works.  But as

20  long as we have those papers, he can start working on

21  trying to get the properties -- all we're saying is, he's

22  going to need that order.  And I don't have any doubt

23  that --

24        THE COURT:  It's going to be months before Judge

25  -- Judge Stengel's, first of all, not going to dismiss the

1  case until the terms are complied with.  And number two,

2  it's going to take probably several months for them to get

3  all the Government agencies to sign off on the underlying

4  settlement agreement.

5          So they'll get you some type of paper to say, we

6  have an agreement to settle, the terms are being finalized,

7  here's the material terms stated in court, case is going to

8  be dismissed once these are complied with.

9          MR. O'CONNOR:  I guess maybe I'm overlording

10 this, Judge, but I don't want to be in a situation where he

11 has like a $3 million judgment because of a period of a

12 couple weeks till we get the right paper.  So I will wait

13 till I see what the Government gives us, but I might be

14 back here to argue when that six-month period really starts

15 from.

16         THE COURT:  Well, as far as I'm concerned today,

17 it starts now.  We have six months.  We have a cure period.

18 So we can get started on this process.  If you run into

19 impediments trying to sell the property because of the

20 pending litigation, the U.S. Attorney's Office will give

21 you whatever you need to get that resolved.

22         So is that acceptable to everyone?

23         MS. AMOROSA:  Yes, Your Honor.

24         MR. O'CONNOR:  I'm concerned about it, Judge.

25         THE COURT:  I know, but we don't have a choice

1    because --

2             MR. O'CONNOR:  Well, we do have a choice, Judge.

3             THE COURT:  Well, we --

4             MR. O'CONNOR:  They can do whatever they need.

5    If the Government wants to make this happen and wants the

6    six months to be a period, like add a terra clause where

7    they have a $3 million judgment based on this.  And if that

8    six months is important to them as opposed to -- they can

9    make the paperwork happen.  It's not -- that's not fair to

10   say, well, the Government is going to take whatever they're

11   going to take.

12            THE COURT:  I said that they're going to give you

13   whatever paperwork you need to allow you to sell these

14   properties.

15            MR. O'CONNOR:  I understand, and I hear you, Your

16   Honor.  But until I have the piece of paper in my hand, I

17   don't know whether that's going to be effective or not.

18   And what I'm backed up against is, I'm the one who's going

19   to be stuck with a $3 million judgment if I can't make this

20   work.

21            THE COURT:  So we don't have a deal?

22            MR. O'CONNOR:  We have a deal if it's six months

23   from when we get the settlement agreement.

24            THE COURT:  That's six months from whenever.  We

25   don't know when that's going to start.  That could be --

```
 1              MR. O'CONNOR:  Well, that's on the Government
 2    then, Judge.
 3              THE COURT:  I don't know.  What's your position?
 4    What's the Government's position?
 5              MS. AMOROSA:  Are you making the argument six
 6    months from when we provide you with a draft agreement, or
 7    six months from execution?
 8              MR. O'CONNOR:  Six months from execution.
 9              MS. AMOROSA:  Of course, then they can introduce
10    delay.
11              THE COURT:  All right.  Well, six months from
12    when they give you the paperwork from the Government.  If
13    they give you the draft agreement, then it's on you to get
14    it signed.  No?
15              MS. AMOROSA:  Your Honor, I just want to --
16    because I'm not at all clear on this issue, right now we
17    have pending litigation, and that is all.  The United
18    States has not filed any liens.  We have not in any way
19    encumbered any property.  So I'm not really understanding
20    the issue here.
21              THE COURT:  I'm going to ask Judge Stengel --
22              MS. AMOROSA:  Nothing is encumbered.
23              THE COURT:  -- to put the case in suspense, so
24    there's going to be nothing pending on the case.  There's
25    no litigation hold on anything relating to this.  If they
```

1  give you a settlement agreement for you to sign, why can't

2  the period start then?  That will be within 10 or 20 days.

3          MR. O'CONNOR:  Judge, I have no problem if the

4  settlement agreement is simple and it's all these terms, we

5  can sign it right away.  We've all been involved in

6  settlement agreements which we're actually back and forth

7  because they're not what we think they are.  I have no

8  doubt that Ms. Amorosa is going to act in good faith.  I'm

9  not -- I have no doubt about that.

10          But on the other hand, I don't -- until I see the

11 paper in my hands, how can I say yes?

12          THE COURT:  Well, you know what the standard

13 Government settlement agreements look like.  You guys have

14 both worked at the U.S. Attorney's Office.  We're reciting

15 the material terms on the record today.  The other things

16 are going to be releases and whereas clauses and things

17 like that.

18          MR. O'CONNOR:  So what's so hard?  Let's get the

19 documents and make it happen.

20          THE COURT:  They're going to get it to you within

21 20 days and then we'll start counting six months then.

22          Sorry to hold you up, Pat.

23          (Off the record briefly.)

24          THE COURT:  Okay?

25          MR. O'CONNOR:  Yes, Your Honor.

```
 1              THE COURT:  Okay.  So we're okay on that.  The
 2    period will start when they send you the settlement
 3    agreement.
 4              All right.  Any other terms I omitted for the
 5    Defense?
 6              MS. FULLMER:  Can we just have a moment, Your
 7    Honor?
 8              THE COURT:  Well, I was asking Mr. Laigaie.
 9              MR. LAIGAIE:  No, Your Honor.  I didn't have any
10    other issues or omissions.
11              THE COURT:  Mr. O'Connor or Mr. Baron, anything
12    else?
13              MR. O'CONNOR:  I'm just looking at my notes.  I
14    don't think so, Judge.
15              MS. AMOROSA:  Your Honor, we would like that the
16    six months start from today, and the reason for that -- I
17    think I said it before, but I'll say it again -- we have no
18    control over the speed at which HHS would sign off on the
19    draft settlement agreement.
20              THE COURT:  Well, it seems like if HHS wants the
21    process to start and wants to get the exclusions in place,
22    they'll have an incentive.  I mean, you can't get them
23    something within the next couple weeks and we can start the
24    six months then?  You want to go to trial over that?
25              MS. AMOROSA:  No.  I mean, my hope would be that
```

```
 1   HHS will move.  We will attempt to move them.  We would
 2   prefer six months from today.
 3           THE COURT:  I know, but I -- they won't agree to
 4   that.  They'll agree to six months from when you give them
 5   the paperwork.
 6           MS. AMOROSA:  Okay.
 7           THE COURT:  All right?  We got a deal on that?
 8           MR. BARON:  Yes, Your Honor.
 9           MS. AMOROSA:  Yes, Your Honor.
10           THE COURT:  Okay.  All right.  So, Mr. Baron, he
11   has to -- Mr. Baron has to consent on behalf of his client
12   to the settlement; is that correct --
13           MR. BARON:  Yes.
14           THE COURT:  -- as a relator's counsel?
15           MR. BARON:  Yes.
16           THE COURT:  Do you understand all the terms?
17           MR. BARON:  I do.
18           THE COURT:  All right.  Do you have any questions
19   on them?
20           MR. BARON:  I do not.
21           THE COURT:  Do you feel as though you're entering
22   in this agreement, or the approval of this agreement
23   voluntarily and without coercion?
24           MR. BARON:  Yes.  It's also my understanding that
25   the terms of the realtor's share will be resolved
```

 1    separately between the Federal Government and my client.

 2                THE COURT:  Is that correct, Ms. Amorosa?

 3                MS. AMOROSA:  Yes, Your Honor.  And -- one

 4    second.  That's correct, Your Honor.

 5                THE COURT:  Okay.  All right.  Ms. Amorosa,

 6    subject to the approvals you have to from HHS, is there any

 7    terms that I failed to mention that are material to this

 8    agreement?

 9                MS. AMOROSA:  Your Honor, these terms are

10    agreeable to HHS and to the U.S. Attorney who has

11    authority.

12                THE COURT:  Okay.  Do you feel as though you or

13    anyone on behalf of your client has been threatened,

14    forced, or coerced to do this?

15                MS. AMOROSA:  No, Your Honor.

16                THE COURT:  Okay.  Any questions about the terms?

17                MS. AMOROSA:  Let me confer.

18                THE COURT:  Okay.

19                (Discussion held between counsel off the record.)

20                MS. AMOROSA:  No, Your Honor, we're good.

21                THE COURT:  Okay.

22                Mr. Martinez, do you understand all the terms,

23    sir?

24                MR. MARTINEZ:  Yes.

25                THE COURT:  All right.  Could you -- why don't

```
1   you have you and your wife come up just so we can hear you
2   on the microphone.
3            Thanks for coming in.  Is there any terms that
4   you believe are part of this deal that I haven't talked
5   about or the lawyers haven't talked about?
6            MR. MARTINEZ:  No.
7            THE COURT:  Everything's been talked about?
8            MS. CHLEBOWSKI:  Yes.
9            THE COURT:  Okay.  Do you -- ma'am, same for
10  you --
11           MS. CHLEBOWSKI:  Yes.
12           THE COURT:  -- Ms. Chlebowski?  Do either of you
13  feel as though you've been threatened, forced, or coerced
14  to enter into this settlement?
15           MR. MARTINEZ:  No.
16           MS. CHLEBOWSKI:  No.
17           THE COURT:  Okay.  Are you doing it voluntarily?
18           MR. MARTINEZ:  Yes.
19           MS. CHLEBOWSKI:  Yes.
20           THE COURT:  And have you had plenty of time to
21  talk to your lawyers about it?
22           MR. MARTINEZ:  Yes.
23           MS. CHLEBOWSKI:  Yes.
24           THE COURT:  Do you have any questions either from
25  me or for your lawyers about the settlement?
```

```
 1              MR. MARTINEZ:  No.

 2              MS. CHLEBOWSKI:  No.

 3              THE COURT:  Okay.  Do you understand that the

 4   terms we've recited today are going to be implemented

 5   beginning as soon as the paperwork gets to your lawyers for

 6   review?

 7              MR. MARTINEZ:  Yes.

 8              MS. CHLEBOWSKI:  Yes.

 9              THE COURT:  And that the exclusion for you,

10   Ms. Chlebowski, is going to start six months thereafter?

11              MS. CHLEBOWSKI:  Yes.

12              THE COURT:  Okay.  And you guys are prepared to

13   liquidate those properties to come up with the 800,000?

14              MR. MARTINEZ:  Yes.

15              THE COURT:  Within six months?

16              MR. MARTINEZ:  We try.

17              MS. CHLEBOWSKI:  Yes.

18              THE COURT:  No, you can't try.  `Are you going to

19   do it?

20              MR. MARTINEZ:  We have to.

21              THE COURT:  Because if you don't do it, there's a

22   consequence.

23              MR. MARTINEZ:  Yes.

24              MS. CHLEBOWSKI:  Yes.

25              THE COURT:  The consequence is you're going to be
```

| | |
|---|---|
| 1 | signing that I'm hold a judgment against both of you for |
| 2 | $3 million.  So if you don't pay the United States Attorney |
| 3 | $800,000 within six months, I'm going to give them a |
| 4 | judgment so they can execute for $3 million against both of |
| 5 | you. |
| 6 | MR. MARTINEZ:  Yes. |
| 7 | THE COURT:  Do you both understand that? |
| 8 | MS. CHLEBOWSKI:  Yes. |
| 9 | THE COURT:  Okay. |
| 10 | Counsel, anything else? |
| 11 | UNIDENTIFIED SPEAKER:  No, sir. |
| 12 | UNIDENTIFIED SPEAKER:  No, Your Honor. |
| 13 | THE COURT:  Okay, thank you. |
| 14 | Anything else from the Government? |
| 15 | MS. AMOROSA:  No, Your Honor. |
| 16 | THE COURT:  Okay. |
| 17 | MS. FULLMER:  Not from me, Your Honor. |
| 18 | THE COURT:  Okay.  The transcript will be |
| 19 | available whenever you want to order it if anybody needs |
| 20 | it, probably within the next couple days. |
| 21 | Pat? |
| 22 | Just let the clerk's office know if anybody needs |
| 23 | a transcript.  And I know it's been a long day and |
| 24 | everybody's made significant concessions, and I wanted to |
| 25 | thank everyone for their patience in a stressful situation |

1  with some difficult issues, so I appreciate you staying so

2  late.

3          GROUP COLLECTIVELY:  Thank you, Your Honor.

4      (Proceedings adjourned at 5:35 p.m.)

5                          *  *  *  *  *

6

7

8              **C E R T I F I C A T I O N**

9

10         I, Valori Weber, court-approved transcriber,

11  certify that the foregoing is a full and correct

12  transcript from the official electronic sound

13  recording of the proceedings in the above-entitled

14  matter.

15

16

17  _____

18  Valori Weber, CET-711

19  Weber Reporting Corporation

20  2755 Commercial Street SE, #101-216

21  Salem, OR  97302

22  970.405.3643

23

24  Date:  April 11, 2018

25